UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re
                  11-12685 B
  JEFFREY R. HOWELL and
  REBECCA L. HOWELL,

      Debtors         <u>DECISION & ORDER</u>
------------------------------------------------------

        Office of the United States Trustee
        Jill M. Zubler, Esq., of counsel
        Olympic Towers, Suite 401
        300 Pearl Street
        Buffalo, NY 14202

        Cooke & Steffan
        Thomas A. Steffan, Esq., of counsel
        13132 Main Street
        Alden, NY 14004
        Attorneys for the Debtors

Bucki, Chief U.S.B.J., W.D.N.Y.

  The United States Trustee has moved to dismiss this Chapter 7 case on grounds that the granting of bankruptcy relief would constitute an abuse. The central issue is whether the obligation to pay a non-dischargeable student loan can serve as the kind of special circumstance that will overcome a statutory presumption of abuse under 11 U.S.C. § 707(b)(2).

  Jeffrey and Rebecca Howell filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on August 2, 2011. As reported on schedules submitted with their petition, the debtors have one child. Their principal assets are a single family home with an estimated value of $80,900, and two automobiles: a 2002 Mazda with an estimated value of $2,285, and a 2005 minivan with an estimated value of $6,491. Mr. and Mrs. Howell acknowledge a mortgage with an outstanding balance of more than $55,000, and a secured car loan with an approximate balance of $6,535. The schedules show no priority debt, but unsecured liabilities totaling $163,850. Included in this later amount are non-dischargeable student

loans of almost $130,000.

When the bankruptcy petition was filed, Jeffrey Howell worked as a computer programmer, for which he received a net monthly take home pay of $3,505.07. Rebecca Howell received a net monthly take home pay of $93.71 from a part time position, in addition to monthly unemployment compensation of $1,019.10. Thus, they report a combined average monthly income of $4,617.88. Meanwhile, on their schedule of current expenditures, Jeffrey and Rebecca Howell claim average monthly expenses of $4,426.16, which includes monthly student loan payments in the amount of $658.

Section 707(b)(1) of the Bankruptcy Code establishes the general rule, that the Court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." Further, section 707(b)(2) provides that "the court shall presume abuse" if the debtors cannot satisfy certain financial benchmarks.[1] Applying the specific guidelines of the statute, the Office of the United States Trustee has calculated that after deductions for allowable expenses, the debtors enjoy a current monthly income that triggers the presumption of abuse. Mr. and Mrs. Howell do not dispute this computation, and concede that the statute does not designate student loan payments as an allowable expense for purposes of the means test analysis. They observe, however, that if the student loan payments were treated as an allowable expense, their current monthly income would fall to a level that avoids a presumption of abuse. Accordingly, they ask that the court treat the non-dischargeable character of those student loans as a special circumstance that will serve to rebut the presumption.

Section 707(b)(2)(B)(i) of the Bankruptcy Code states that in any proceeding to

---

[1] Section 707(b)(2)(A)(i) states in part that "the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of – (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or (II) $11,725."

dismiss a case for abuse, "the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." Here, as required by 11 U.S.C. § 707(b)(2)(B)(ii) and (iii), the debtors have documented and explained their student loan obligations, and have attested under oath to the accuracy of the information that they have provided to the court. As set forth in their stipulation of facts, the trustee and debtors agree that the "only issue to be resolved is whether or not the Debtors' student loan debt constitutes 'special circumstances' sufficient to rebut" the presumption of abuse.

Bankruptcy Courts have expressed deeply divergent views on the issue that we must now resolve. Several of my distinguished colleagues have allowed the existence of a student loan obligation to serve as the type of special circumstance that will rebut the presumption of abuse. *In re Sanders*, 454 B.R. 855 (Bankr. M.D.Ala. 2011); *In re Martin*, 371 B.R. 347 (Bankr. C.D. Ill. 2007); *In re Delbecq*, 368 B.R. 754 (Bankr. S.D. Ind. 2007); *In re Haman*, 366 B.R. 307 (Bankr. D. Del. 2007); *In re Templeton*, 365 B.R. 213 (Bankr. W.D. Okla. 2007). *See also In re Knight*, 370 B.R. 429 (Bankr. N.D. Ga. 2007). Although the debtor in *In re Willson,* 2010 WL 1509288 (Bankr. M.D. Pa.) had failed to meet her burden to prove the absence of a reasonable alternative for resolution of her student loan, Judge Thomas recognized "that a nondischargeable student loan can conceivably become a special circumstance under the statute." On the other hand, other respected judges have held that student loans are so common and ubiquitous that their existence does not create a circumstance that is special for purpose of the statute. *In re Harmon* 446 B.R. 721 (Bankr. E.D. Pa. 2011); *In re Burggraf*, 436 B.R. 466 (Bankr. N.D. Ohio 2010); *In re Carrillo*, 421 B.R. 540 (Bankr. D. Ariz. 2009); *In re Champagne*, 389 B.R. 191 (Bankr. D. Kan. 2008); *In re Pageau*, 383 B.R. 221 (Bankr. D.N.H. 2008). In looking to resolve this conflict, let us first

consider the purpose and character of a presumption.

Rather than to set an absolute standard for dismissal, section 707(b)(2) establishes only a "presumption" for when the granting of bankruptcy relief would constitute an abuse. Like most presumptions, this statute creates a rule of evidence "calling for a certain result in a given case unless the adversely affected party overcomes it with other evidence." BLACKS LAW DICTIONARY 1304 (9th ed. 2009). Here, such other evidence must demonstrate "special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). But in applying this standard for rebuttal, we must remember that a presumption serves only as a rule of evidence to assist in determining the ultimate finding of the court. Thus, the opportunity for rebuttal should reflect this underlying purpose. The court must therefore construe the statutory standard for rebuttal in a fashion that will allow a fair determination of whether abuse has occurred.

But for the potential application of a presumption, the instant facts provide no persuasive indication of an abusive filing. Contrary to the trustee's assertions, this case presents few of the factors that compelled dismissal in *In re Kornfield*, 164 F.3d 778 (2nd Cir. 1999). In particular, the record contains no evidence of "an extravagant lifestyle," or of a refusal to adjust lifestyles "in the face of lowered income." *Id.* at 783. In her reply brief, the United States Trustee admits that "[i]t is undisputed that the cost of the [debtors'] home is modest." With the possible exception of future income tax refunds, the schedules show no significant non-exempt assets. Mr. and Mrs. Howell made no large purchases on the eve of bankruptcy, and aside from student loans, they have declared no outrageous amount of unsecured debt.

The decision in *In re Kornfield* involved the question of whether the bankruptcy filing constituted substantial abuse. As amended in 2005, the current statute allows dismissal in

instances of mere abuse, with no requirement of substantiality. Even under this lesser standard, however, the court finds insufficient evidence of abuse. The facts of this case fully support the explanation that the debtors gave as the reason for their bankruptcy filing, namely that they had found it impossible to pay both their student loans and their other unsecured obligations. The debtors have three outstanding student loans. In sworn affidavits, the debtors report that they are not eligible for any further extensions and that as presently constituted, the loans require monthly payments through dates that range between 16 and 24 years after the filing of their bankruptcy petition. As reflected on an amended statement of current monthly income (Form B22A), the debtors have a current monthly disposable income of $697.47. The trustee and debtors have stipulated that the student loan payments total $658 per month. Accordingly, if the student loans were paid from the calculated amount of current monthly disposable income, the debtors would have access to less than $40 per month for payment of all other unsecured obligations. A surplus of such limited amount would surely not suggest an abusive filing, either in the view of this court or under the benchmarks of 11 U.S.C. § 707(b)(2)(B)(iv).[2]

Presumptions provide convenient and shorthand paths to reach a proper finding of fact. Opportunities for rebuttal serve to correct those outcomes where the presumed conclusion deviates from an underlying goal or statutory intent. Although a presumption of abuse arises in the present instance, the totality of evidence supports the absence of an abusive filing. This situation suggests a context where the standard of rebuttal is appropriately met. Section 707(b)(2)(B)(i) provides that "special circumstances" may rebut the presumption of abuse. Here, the non-dischargeable character of the debtors' student loans will necessitate expenses for which the debtors have no reasonable alternative. The magnitude of the student loans will further compel substantial payments over an extended

---

[2] In relevant part, this subsection states: "The presumption of abuse may only be rebutted if the additional expenses or adjustments to income" that result from the debtor's special circumstances "cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of – (I) 25 percent of the debtor's nonpriority unsecured claims, or $7,025, whichever is greater; or (II) $11,725.

period of time, without hope for any deferral. For the very reason that they cause the presumption of abuse to yield a conclusion that reclassifies what we should otherwise fairly view as a non-abusive filing, the debtors' non-dischargeable student loans constitute special circumstances within the meaning of 11 U.S.C. §707(b)(2)(B).

Section 707(b)(2)(B)(i) allows a debtor to rebut a presumption of abuse by demonstrating special circumstances "that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." In certain instances, a reasonable alternative may derive from the opportunity for conversion to Chapter 13. Even in Chapter 13, however, student loans are similarly non-dischargeable. Customary practice in this district would compel a plan that provides an equal rate of distribution to all unsecured creditors. Due to this mandate and inevitable costs of administration, a Chapter 13 plan would pay on account of student loans a sum less than the contractual payments that the debtors would otherwise make during the same period of time. Although the pendency of Chapter 13 would stay other efforts to collect on the student loans, interest would continue to accrue. Consequently, after completing any likely plan under Chapter 13, the debtors would owe more on their student loans than if they had continued to make their regular contractual payments during the same period of time. To satisfy this remaining balance, Mr. and Mrs. Howell would then need to either increase their monthly payments or extend the dates of maturity. At the time of their bankruptcy filing, the debtors remained obligated to make monthly payments on account of their three student loans over terms that ranged from 16 to 24 additional years. In light of these current arrangements that already mandate significant payments over an extended period, a conversion to Chapter 13 would here provide no reasonable alternative.

The court has carefully considered all of the other arguments of the trustee, but finds no persuasive evidence of abuse. For the reasons stated herein, the motion to dismiss this case pursuant of 11 U.S.C. § 707(b) is denied.

So ordered.

Dated:    Buffalo, New York            /s/    CARL L. BUCKI
         September 11, 2012           Hon. Carl L. Bucki, Chief U.S.B.J.,
                                      W.D.N.Y.